**BEXAR APPRAISAL DISTRICT and Bexar County Appraisal Review Board, Appellants,**

v.

**INCARNATE WORD COLLEGE, Appellee.**

**No. 04–90–00721–CV.**

Court of Appeals of Texas, San Antonio.

Jan. 29, 1992.

Rehearing Denied Feb. 27, 1992.

Dale Wilson, Edward Kliewer, III, Ron Patterson, Foster, Lewis, Langley, Gardner & Banack, San Antonio, for appellants.

Roger G. Bresnahan, Law Offices of Pat Maloney, P.C., San Antonio, for appellee.

Before PEEPLES, CARR and GARCIA, JJ.

## OPINION

CARR, Justice.

This property-tax-exemption case presents us with an issue of first impression involving statutory construction: whether a tax exemption under section 11.21 of the Property Tax Code applies to a college-owned building used as a private residence for the college's president and his family. The property at issue is a house owned by appellee, Incarnate Word College (the College), and used as a residence by the College's president. Following a bench trial, the trial court entered judgment granting exemption to the house for tax year 1990. The Appraisal District now appeals the court's judgment allowing exemption for tax year 1990.

The record reflects that until 1985 the presidents of the College were members of the Order of Sisters of Charity of the Incarnate Word, the religious order that owns and operates the College. Due to difficulties such as declining enrollment and a dwindling financial base, the College decided to consider appointing a lay college president. In May 1985 the College's Board of Trustees met and decided that a residence suitable for a lay college president was essential to attract candidates. In July of that year, Louis Agnese was hired as president of the College, and in September the College purchased a house about a mile from the campus. The Board of Trustees later decreed that this house would be the required residence of the College's president.

The record reflects that the house is used on a full-time basis as the private residence for Dr. Agnese and his family. The residence also houses the Amy Freeman Lee Art Collection. In addition, the house is occasionally used for a variety of nonresidential purposes: student meetings; faculty meetings; in-service workshops; housing for visiting dignitaries; Board-of-Trustees meetings; entertainment for faculty and students; and college fund-raising activities. The total nonresidential use shown by the record amounts to less than 300 hours for calendar year 1988. The record further shows that for calendar year 1990 the house was used for fund-raising purposes fifteen to twenty days per month. It is undisputed that the College owns the house and pays all of the bills incurred in connection with the house. The College, moreover, retains total control over the functions to be held at the house.

In two points of error, the Appraisal District contends that the trial court erred in concluding as a matter of law that the house is used exclusively for educational purposes (point one), and that the house is exempt as a "school" (point two). Under both points of error, the Appraisal District argues that the College's use of the house as the president's private residence and for other activities, such as college fund-raising, does not qualify the house for tax-exempt status because the property is not used *exclusively* for educational purposes. See TEX.TAX CODE ANN. § 11.21(a) (Vernon 1982).

Section 11.21 of the Property Tax Code provides in part:

(a) A person is entitled to an exemption from taxation of the buildings and tangible personal property that he owns and that are used for a school ... if:

(1) the school is operated exclusively by the person owning the property;

(2) except as permitted by Subsection (b) of this section, the buildings and tangible personal property are *used exclusively for educational functions;* and

(3) the buildings and tangible personal property are *reasonably necessary for the operation of the school.*

(b) Use of exempt tangible property for functions other than educational functions does not result in loss of an exemption authorized by this section if those other functions are *incidental* to use of the property for educational functions and benefit the students or faculty of the school.

TEX.TAX CODE ANN. § 11.21(a), (b) (Vernon 1982) (emphasis added).

■ It is a long-standing rule of construction in Texas that language granting exemptions from taxation must be construed strictly. *See, e.g., Bullock v. Nat'l Bancshares Corp.*, 584 S.W.2d 268, 271–72 (Tex.1979), *cert. denied*, 444 U.S. 1016, 100 S.Ct. 667, 62 L.Ed.2d 645 (1980) (franchise taxes); *Hilltop Village, Inc. v. Kerrville Indep. School Dist.*, 426 S.W.2d 943, 948 (Tex.1968) (home for the aged not exempt from ad valorem taxation); *River Oaks Garden Club v. City of Houston*, 370 S.W.2d 851, 855 (Tex.1963) (because nonprofit organization was not institution of purely public charity, it was not exempt from taxation). The Supreme Court of Texas has explained the reasoning for strict construction of exemption provisions:

> [A] strict construction seems more in harmony with the intent of the people when they adopted the Constitution in 1876, and conforms to our announcement in *Cox v. Robison*, 105 Tex. 426, 150 S.W. 1149, 1151, that "The fundamental rule for the government of courts in the interpretation or construction of a Constitution is to give effect to the intent of the people who adopted it." The action of the delegates in the Constitutional Convention of 1875 on various tax exemption proposals, as reflected in the Journal of the Convention, indicates that they intended that exemptions from taxes be narrow and limited.

*River Oaks Garden Club*, 370 S.W.2d at 854. Moreover, the Texas Supreme Court has recently reemphasized that it is important that constitutional tests of the validity of exemption from property taxes be carefully applied:

> *[E]xemptions from taxation are not favored* by the law and *will not be favorably construed* .... Accordingly, the burden of proof of *clearly* showing that the organization falls within the statutory exemption is on the claimant....

*North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex.1991) (emphasis added) (citations omitted).

■ In this case, the College has the burden of *clearly* showing that the property at issue is used exclusively for educational functions *and* that the property is reasonably necessary for the operation of the school. The evidence, however, shows that the house is used primarily as the private residence for the College's president and his family. Following the requirement to strictly construe tax-exemption provisions, we hold that this private residential use is not an educational function.

Based upon the undisputed evidence in the record, we find that the house is not used "exclusively for educational functions" as required by section 11.21(a)(2) and that the house's private residential use does not amount to the incidental-use exception of section 11.21(b). *See* TEX.TAX CODE ANN. § 11.21(a), (b) (Vernon 1982). We therefore conclude that the trial court erred in ruling that the house is exempt from property taxation. Accordingly, we grant the Appraisal District's two points of error. For the reasons stated, we reverse and render judgment that the house in question is not exempt from taxation for tax year 1990.